IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SARA CORDELL**, on behalf of herself and all others similarly situated, | ) )  CASE NO. _____ |
| Plaintiff, | ) ) |
| v. | )  **COLLECTIVE AND CLASS ACTION** )  **COMPLAINT** ) |
| **SUGAR CREEK PACKING CO.**, | )  **JURY DEMAND ENDORSED HEREON** ) |
| Defendant. | ) |

Plaintiff Sara Cordell files this Complaint against Defendant Sugar Creek Packing Co., seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. (FLSA); Ohio Revised Code (O.R.C.) §4111.03(D), O.R.C. § 4113.15 (OPPA), and O.R.C. §2307.60. The following allegations are based on personal knowledge of Plaintiff's own conduct, and upon information and belief as to the conduct and acts of others:

### INTRODUCTION

1. This case challenges policies and practices of Defendant that violate the FLSA and Ohio law.

2. Plaintiff brings this case as a collective action on behalf of herself and other similarly situated persons who have joined or may join this case pursuant to 29 U.S.C. § 216(b) (the Opt-Ins).

3. Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and others like her who worked for Defendant in Ohio and suffered the same harms described below.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this forum pursuant to 28 U.S.C. § 1391.

6. The Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

## PARTIES

7. During relevant times, Plaintiff has been an adult individual residing in this District and Division. Plaintiff's written Consent to Join form is attached as **Exhibit A**.

8. At all relevant times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e).

9. Defendant is a for-profit Ohio corporation that is registered to conduct business in Ohio, and who can be served at its registered agent: c/o John G. Richardson, at 2101 Kenskill Ave., Washington CH, OH 43160.

10. At all relevant times, Defendant was an employer within the meaning of 29 U.S.C. § 203(d).

11. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

12. At all relevant times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

**FACTUAL ALLEGATIONS**

13. Plaintiff was employed as an hourly non-exempt work for approximately two years until late 2020 or early 2021.

14. Defendant's business includes providing "packaged foods for retail and food service channels, providing a wide-ranging, value-added assortment of raw and fully-cooked products for domestic and international customers across all channels of trade." Its stated goals include "innovative processing, cooking, packaging and food safety systems."[1]

15. Defendant has four locations in Ohio, one in Indiana, and one in Kansas.[2]

16. As a manufacturer of food products, Defendant is regulated by the U.S. Food and Drug Administration ("FDA"), and is subject to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 9, *et seq.* (hereinafter "FDCA").[3]

17. In enforcing the FDCA, the FDA promulgates its own Good Manufacturing Practices ("GMPs") for the manufacturing, packing, or holding of human food, set forth in 21 C.F.R. § 110, with which Defendant is required by law to comply.

18. The GMPs have a section dedicated to personnel, which specifically requires that "[a]ll persons working in direct contact with food, food-contact surfaces, and food-packaging materials ***shall conform to hygienic practices while on duty*** to the extent necessary to protect against contamination of food." 21 C.F.R. § 110.10(b) (emphasis added). These practices include, but are not limited to:

> a. Wearing outer garments suitable to the operation in a manner that protects against the contamination of food, food-contact surfaces, or food-packaging materials.

---

[1] https://www.sugarcreek.com/about (last viewed 2/17/21).

[2] https://www.sugarcreek.com/facilities (last viewed 2/17/21).

[3] *See e.g.* www.accessdata.fda.gov > Inspection Classification Database Search > "Sugar Creek Packing" (last viewed 2/17/21).

    b. Maintaining adequate personal cleanliness.

    c. Washing hands thoroughly (and sanitizing if necessary to protect against contamination with undesirable microorganisms) in an adequate handwashing facility before starting work, after each absence from the work station, and at any other time when the hands may have become soiled or contaminated.

    d. Removing all unsecured jewelry and other objects that might fall into food, equipment, or containers, and removing hand jewelry that cannot be adequately sanitized during periods in which food is manipulated by hand. If such hand jewelry cannot be removed, it may be covered by material which can be maintained in an intact, clean, and sanitary condition and which effectively protects against the contamination by these objects of the food, food-contact surfaces, or food-packaging materials.

    e. Maintaining gloves, if they are used in food handling, in an intact, clean, and sanitary condition. The gloves should be of an impermeable material.

    f. Wearing, where appropriate, in an effective manner, hair nets, headbands, caps, beard covers, or other effective hair restraints.

    g. Storing clothing or other personal belongings in areas other than where food is exposed or where equipment or utensils are washed.

    h. Confining the following to areas other than where food may be exposed or where equipment or utensils are washed: eating food, chewing gum, drinking beverages, or using tobacco.

    i. Taking any other necessary precautions to protect against contamination of food, food-contact surfaces, or food-packaging materials with microorganisms or foreign substances including, but not limited to, perspiration, hair, cosmetics, tobacco, chemicals, and medicines applied to the skin.

19. Notably, "[r]esponsibility for assuring compliance by all personnel with all requirements of this part shall be clearly assigned to competent supervisory personnel." 21 C.F.R. §110.10(d).

20. The FDCA prohibits the adulteration of food, and the introduction or delivery for introduction into interstate commerce of any adulterated food. 21 U.S.C. § 331.

21. Food is considered adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health[.]" 21 U.S.C. § 342(a)(4)

22. Any person who violates 21 U.S.C. § 331 "shall be imprisoned for not more than one year or fined not more than $1,000, or both." 21 U.S.C. § 333(a)(1).

23. In determining whether food is adulterated, the FDA applies the criteria and definitions set forth in the GMPs. 21 C.F.R. § 110.5(a).

24. Consequently, if Defendant's employees did not follow the GMPs set forth in 21 C.F.R. § 110.10(b), they could be held criminally liable under 21 U.S.C. § 333(a)(1).

25. Thus, it would be impossible for Plaintiff and those similarly situated, who were engaged in the processing, packaging, and handling of food products, to perform their work duties unless they properly washed and wore sanitary clothing and other protective equipment required by law.

26. Indeed, if Plaintiff and the putative class members did not follow federal law, including washing and wearing sanitary clothing and other personal protective equipment, it is possible, if not likely, that this would cause the spread of food-borne pathogens to those who consumed Defendant's food products.

27. Upon information and belief, Defendant would not want to endanger the public by encouraging or permitting their employees to disregard federal and/or state food-safety laws.

28. Upon information and belief, Defendant would deem it impossible for their employees to perform their job duties unless they were in compliance with federal or state food safety laws, including the laws requiring Defendant's employees to follow certain washing protocols and wearing sanitary and other protective equipment.

29. As a result, compliance with the GMPs by Defendant's employees involved in the processing, packaging, and handling of food is integral and indispensable to the work they are hired to do.

30. Compliance with the GMPs by Defendant's employees involved in the processing, packaging, and handling of food is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

31. Compliance with the GMPs by Defendant's employees involved in the processing, packaging, and handling of food is a component of the work they are hired to do.

32. Unless Plaintiff and those similarly situated comply with the GMPs, they cannot complete their work.

33. The required safety measures, including handwashing and donning of sanitary clothing and other protective equipment by Defendant's employees involved in the processing, packaging, and handling of food is those employees' first principal activity of the day.

34. Plaintiff and others similarly situated were non-exempt employees under the FLSA and Ohio law, were paid an hourly wage, and performed non-exempt work in Defendant's processing and packaging of food for human consumption.

35. Because Plaintiff and other similarly situated employees are involved in the processing, packaging, or handling of food, to comply with the GMPs they engage in mandatory handwashing and must wear sanitary clothing and other protective equipment, including, but not limited to hair nets and/or beard guards and smocks.

36. Plaintiff and other similarly situated employees were required to wash their hands at designated hand-washing stations before they clocked in each day and at the end of their lunch breaks.

37. Because this work was performed before they clocked in, Plaintiff and those similarly situated are/were not paid for the compensable work.

38. Plaintiff and others similarly situated are/were required by Defendant to perform these activities at work, and were not permitted to perform them at home, because of risks of bringing contaminants into Defendant's facilities where food was processed and packaged for human consumption.

39. This unpaid pre-shift compensable work took up to approximately 15 minutes per shift, depending on how many employees were in line at any one time.

40. Plaintiff and other similarly situated employees, as full-time employees, regularly worked over 40 hours in a workweek.

41. Therefore, Plaintiff and other similarly situated employees were not paid overtime compensation for all of the hours they worked over forty (40) each workweek.

42. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA and Ohio law.

43. Upon information and belief, Defendant failed to make, keep, and preserve records of all hours worked by Plaintiff and other similarly situated employees.

## **COLLECTIVE ACTION ALLEGATIONS**

44. Plaintiff brings this action on her own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendant's unlawful conduct.

45. The collective which Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is herself a member, is composed of and defined as follows:

> **All former and current hourly employees who engaged in handwashing, donning of sanitary gear, and/or related travel and who worked 40 or more hours in any workweek within three (3) years preceding the date of filing of this Complaint through the final resolution of this matter.**

46. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as her own in bringing this action.

47. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## OHIO CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of herself and all other current or former persons employed by Defendant in Ohio within the last two years ("Ohio Class") defined as:

> **All former and current hourly employees who engaged in handwashing, donning of sanitary gear, and/or related travel and who worked 40 or more hours in any workweek in Ohio within two (2) years preceding the date of filing of this Complaint through the final resolution of this matter.**

49. The Ohio Class is so numerous that joinder of all class members is impracticable. Plaintiff is unable to state the exact size of the potential Ohio Class members but estimates that it consists of at least 90 or more employees.

50. There are questions of law or fact common to the Ohio Class including: whether Defendant failed to pay its employees for handwashing and donning of sanitary gear required for them to perform their duties of processing and packing food for human consumption, as well as the associated travel, and whether that resulted in the underpayment of overtime.

51. Plaintiff will adequately protect the interests of the Ohio Class. Her interests are not antagonistic to but, rather, are in unison with, the interests of the Ohio Class members. Plaintiff's counsel has broad experience in handling class action wage-and-hour litigation and are fully qualified to prosecute the claims of the Ohio Class in this case.

52. The questions of law or fact that are common to the Ohio Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Ohio Class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Ohio Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Ohio Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)

54. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

55. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked over forty (40) each workweek violated the FLSA.

56. Plaintiff and those similarly situated are not exempt from the protections of the FLSA.

57. Defendant's failure to keep records of all hours worked for each workday and the total hours worked each workweek by Plaintiff and other similarly situated employees violated the FLSA.

58. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

59. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been harmed in that they have not received wages due to them pursuant to the FLSA, and because such wages remain unpaid, damages continue.

## COUNT TWO
### (Ohio Overtime and OPPA - Class Violations)

60. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

61. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked over forty (40) each workweek violated Ohio law.

62. Plaintiff and those similarly situated are not exempt from the protections of Ohio law.

63. Defendant's failure to keep records of all hours worked for each workday and the total hours worked each workweek by Plaintiff and other similarly situated employees violated Ohio law.

64. Additionally, the OPPA requires Defendant to pay Plaintiff and the Ohio Class members all wages, including overtime, on or before the first day of each month, for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and on

or before the fifteenth day of each month, for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

65. During relevant times, Plaintiff and the Ohio Class members were not paid all overtime wages earned within 30 days of performing the work. *See* O.R.C. § 4113.15(B).

66. Plaintiff's and the Ohio Class members' earned overtime compensation remains unpaid for more than 30 days beyond their regularly scheduled payday.

67. The OPPA provides for liquidated damages in an amount equal to six percent (6%) of the amount of the claim still unpaid or two hundred dollars per pay period, whichever is greater.

68. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated Ohio law.

69. As a result of Defendant's practices, Plaintiff and other similarly situated Ohio Class employees have been harmed in that they have not received wages due to them pursuant to Ohio's wage and hour laws, and because such wages remain unpaid, damages continue.

## COUNT THREE
**(Damages Pursuant to O.R.C. § 2307.60)**

70. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

71. As a result of Defendant's practices and policies, Plaintiff and those similarly situated have been harmed in that they have not received wages due to them pursuant to the FLSA.

72. The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

73. By its acts and omissions described herein, Defendant has willfully violated the FLSA, and Plaintiff and those similarly situated have been injured as a result.

74. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

75. As a result of Defendant's willful violations of the FLSA, Plaintiff and Opt-in Plaintiffs who join and worked in Ohio are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, and all similarly situated persons, collectively pray that this Honorable Court:

A. Conditionally certify this case as a "collective action" pursuant to 29 U.S.C. §216(b), and direct that Court-approved notice be issued to similarly situated individuals informing them of this action and enabling them to opt-in;

B. Enter judgment against Defendant and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Ohio Class Members;

C. Award Plaintiff, and the collective and class she represents, actual damages for unpaid wages, liquidated, exemplary, and punitive damages as provided under the FLSA and Ohio law;

D. Award Plaintiff, and the collective and class she represents, pre-judgment and/or post-judgment interest at the statutory rate;

E. Award Plaintiff, and the collective and class she represents, attorneys' fees, costs, and disbursements; and

F. Award Plaintiff, and the collective and class she represents, further and additional relief as this Court deems just and proper.

Respectfully submitted,

**NILGES DRAHER LLC**

*/s/ Robi J. Baishnab*
Robi J. Baishnab (0086195)
34 N. High St., Ste. 502
Columbus, OH 43215
Telephone: 614-824-5770
Facsimile: 330-754-1430
Email: rbaishnab@ohlaborlaw.com

Hans A. Nilges (0076017)
Shannon M. Draher (0074304)
7266 Portage St., N.W.
Suite D
Massillon, Ohio 44646
Telephone: 330-470-4428
Facsimile: 330-754-1430
Email: hans@ohlaborlaw.com
sdraher@ohlaborlaw.com

*Counsel for Plaintiff*

**JURY DEMAND**

Plaintiff demands a trial by jury on all eligible claims and issues.

*/s/ Robi J. Baishnab*
Robi J. Baishnab

*Counsel for Plaintiff*

13