**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **SARA CORDELL**, on behalf of herself and others similarly situated, | **)** | Case No. 2:21-cv-755 |
| | **)** | |
| | **)** | Judge Chief Judge Algenon L. Marbley |
| Plaintiff, | **)** | Magistrate Judge Kimberly A. Jolson |
| | **)** | |
| vs. | **)** | **JOINT MOTION FOR APPROVAL** |
| | **)** | **OF FLSA COLLECTIVE ACTION** |
| **SUGAR CREEK PACKING CO.**, | **)** | **SETTLEMENT** |
| | **)** | |
| Defendant. | **)** | |

Named Plaintiff Sara Cordell ("Named Plaintiff"), individually and on behalf of others similarly situated, and Defendant Sugar Creek Packing Co. ("Defendant") (collectively, the "Parties") respectfully move the Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations and facilitated by a third-party neutral. The following documents and memorandum in support are submitted for the Court's approval:

**Exhibit 1**: Collective Action Settlement Agreement and Release (the "Agreement"),[1];

**Exhibit 2**: Notice of Collective Action;

**Exhibit 3**: Consent to Joint form;

**Exhibit 4**: Declaration of Plaintiffs' Counsel Robi J. Baishnab ("Baishnab Dec.");

**Exhibit 5**: Declarations from Eligible Settlement Participants; and,

**Exhibit 6**: Proposed Order approving Settlement.

---

[1] Defined terms used here will be the same as used in the Agreement.

I.    **STATEMENT OF FACTS**

A.    **Factual and Procedural Background.**

On February 22, 2021, Named Plaintiff filed a collective and class action Complaint in the United States District Court for the Southern District of Ohio, *Cordell v. Sugar Creek Packing Co.*, Case No. 2:21-cv-00755-ALM-KAJ (the "Action"). In the Action, Named Plaintiff asserted claims against Defendant, individually and on behalf of others similarly situated under the Fair Labor Standards Act ("FLSA"), and the Ohio Revised Code (R.C.) §§ 4111.03(D), 4113.15, and 2307.60. Specifically, the Action alleged that Defendant violated the FLSA and Ohio law by not paying its food production employees properly for time spent donning and doffing sanitary clothing and handwashing before and after their scheduled shifts, resulting in unpaid overtime. The Action also alleged the failure to pay wages on a semi-monthly basis. (Doc. 1).

On May 27, 2021, Named Plaintiff filed an Amended Complaint, asserting substantially the same overtime claims against Defendant, but based on Defendant's alleged failure to compensate employees for time spent donning and doffing their sanitary clothing during their unpaid meal breaks, commonly referred to as a "bookend" claim. The Amended Complaint also abandoned the claims brought under Ohio R.C. §§ 4113.15 and 2307.60. (Doc. 15).

Defendant answered both Complaints, denying all liability, which Defendant continues to deny. (Docs. 12, 17).

On September 7, 2021, Named Plaintiff filed a Motion for Conditional Certification, which was opposed and fully briefed. (Docs. 26, 30, 21).

On August 16, 2022, the Court granted Defendant's Motion to Stay, pending the outcome of *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023), and denied Named Plaintiff's Motion for Conditional Certification, without prejudice. (Docs. 32, 33, 35, 39).

The Court also granted Named Plaintiff's request that the statute of limitations be equitably tolled for potential opt-in plaintiffs through the course of the stay. (Doc. 39).

Following the May 19, 2023, *Clark* decision, Named Plaintiff moved for expedited discovery and for continued equitable tolling on May 26, 2023, which was fully briefed, including a number of subsequent supplemental filings. (Docs. 42, 43, 45, 52, 53-55, 66). On September 11, 2023, the motion was granted in part and denied in part, and the request for equitable tolling was granted. (Doc. 67).

On August 7, 2023, Defendant filed a Motion to Strike Plaintiff's Memoranda Accompanying Plaintiff's Notices of Supplemental Authority, to which Named Plaintiff filed a Notice of Non-opposition. (Docs. 58, 65). The motion was granted on September 13, 2023. (Doc. 71).

To avoid the burden, expense, risks and uncertainty of litigation, the Parties agreed to engage in good faith, arm's-length settlement discussions, including mediation. (Agreement at ¶8). On November 14, 2023, the Court granted the Parties' Joint Motion to Stay Pending Mediation. (Docs. 70-71).

In preparation for mediation, the Parties conferred and agreed to a random sampling method for mediation production. Defendant produced the random sampling of certain time and pay data for the putative collective. Plaintiffs' Counsel engaged the services of a PhD data scientist to construct a damages model using the produced data. Plaintiff's Counsel's PhD data scientist made certain assumptions, estimates, and extrapolations. The model was shared with the mediator and Defendant's Counsel, and the model served as a basis of negotiations. Also shared, were the results of the survey that Plaintiffs' Counsel conducted concerning the estimated length of time to don, doff, and other related tasks, which Named Plaintiff and the putative collective/class were

alleged to have performed during their unpaid meal breaks. (Agreement at ¶9; Baishnab Dec. at ¶12).

On November 21, 2023, the Parties mediated before Hon. Diane M. Welsh (Ret.), and although the Parties were unable to reach a settlement that day, they continued settlement discussions facilitated by Judge Welsh and reached an agreement in principle on December 7, 2023. (Docs. 72, 75). Between December 7, 2023, and the execution of this Agreement, the Parties continued to refine their agreement and ultimately agreed on the terms of their Agreement, which is attached as **Exhibit 1** to this Motion. To conserve judicial resources, on December 19, 2023, the Parties filed their Consent to Magistrate Judge Kimberly A. Jolson's jurisdiction for the purposes of approving and overseeing settlement. (Doc. 77).

>    **B.**    **Summary of the Settlement.**

Settlement was reached having been facilitated by a third-party neutral, and through good faith, arms' length negotiations between Counsel who are experienced in wage and hour litigation, including collective and class actions and settlements. Settlement resolves bona fide disputes that have existed throughout the litigation. (Baishnab Dec. at ¶¶3-11, 13).

The Settlement includes **6,310** former and current hourly employees who engaged in handwashing, donning and doffing of sanitary gear, and related travel and who worked 40 or more hours in any workweek from August 16, 2019, to November 2, 2023. (Agreement at ¶21).

The total settlement amount is **$1,100,000.00**, which includes: (1) all Individual Settlement Payments; (2) Service Award for Named Plaintiff; (3) Plaintiffs' Counsel's attorneys' fees of one-third of the Global Settlement Fund; (4) Plaintiff's Counsel's litigation expenses; and (5) the costs of settlement administration. (*Id*. at ¶23).

For purposes of Settlement, the Parties agree that Named Plaintiff and the Eligible Settlement Participants are similarly situated under 29 U.S.C. § 216(b) of the FLSA. (*Id*. at ¶36).

A Notice of Collective Action Lawsuit will be sent to the Eligible Settlement Participants, along with a Consent to Join Form to join the Action. (*Id.* at ¶¶16, 27, 44-48). Those who join the Action will become Claimants and receive settlement payments and, in exchange, they will release the Released Parties from the Released Claims for the Release Period, as outlined in the Agreement. (*Id.* at ¶¶15, 29-31, 66).

After deducting Service Award, attorneys' fees, litigation costs, and settlement administration costs, the remaining amount will be distributed to Claimants will be calculated as the number of workweeks that the respective Claimant worked for Defendant during the period of time from August 16, 2019 through November 2, 2023, multiplied by $4.14. (*Id.* at ¶21).

Settlement provides for a Service Award of **$10,000.00** to Named Plaintiff in consideration for her substantial assistance rendered to Plaintiffs' Counsel and in pursuing the rights of all Eligible Settlement Participants. (Agreement at ¶¶34, 41; Baishnab Dec. at ¶41).

### C. Plaintiffs' Counsels approach to settlement.

As detailed in the attached **Exhibit 2**, Plaintiffs' Counsel takes a pragmatic approach in assessing the objective, mathematical value of a case. (Baishnab Dec. at ¶¶14-38). Specifically, Plaintiffs' Counsel explains that legal scholarship has observed that it is often the case that "both plaintiffs and defendants frequently reject settlement proposals that would have been financially advantageous." (*Id.* at ¶15). Likewise, many cases settle for an inappropriate amount. *Id.*

To avoid making poor settlement decisions, Plaintiffs' Counsel has adopted a systematic approach to analyzing settlements that is grounded in empirical research and designed to achieve the maximum utility of a lawsuit. Their approach is also specifically designed to avoid various decision-making biases that could result in the rejection of a favorable settlement or result in one that is disadvantageous to their clients. (Baishnab Dec. at ¶16).

One such bias is the "subadditivity effect," which is the tendency of people to judge the probabilities of the whole to be less than the probabilities of the parts. For example, in one study, attorneys were asked to calculate probabilities of being awarded four different ranges of damages. The collective probabilities summed to 170%. (*Id.* at ¶17).

From Plaintiffs' Counsel's own personal experience and in speaking with colleagues, attorneys often conclude that a case with an estimated 50% chance of winning each of three different issues in the litigation is a "50/50" case. But it is not. Rather, there is only a 12.5% chance when the probabilities of all three issues are compounded (*i.e.*, 0.5 X 0.5 X .5 = 0.125). (*Id.* at ¶18). Other biases include the self-serving bias, which causes litigants to overestimate the chances that an objective third party (i.e., the Court or a jury) will favor their perspective. Overoptimism and overconfidence biases also tend to result in poor predictions. (*Id.* at ¶19).

These cognitive biases affect all individuals to some degree. They are particularly unhelpful in analyzing the reasonableness of a settlement. (*Id.* at ¶20). To mitigate these biases, Plaintiffs' Counsel performs an Expected Value ("EV") calculation for nearly all cases, which can be generalized as the anticipated value of a case at some point in the future after various uncertain events have occurred. (*Id.* at ¶21).

Plaintiffs' Counsel calculates the EV prior to mediation and before any significant settlement discussions. Essentially, the EV is calculated by summing the product of the probabilities of winning at each stage of the litigation and the expected outcome of success and the product of the probabilities of losing at each stage and zero, that is, EV = (probability of win X expected damages) + (probability of loss X $0) - Costs. The EV of a case is calculated and visualized using the decision tree software TreeAge Pro©. (*Id.* at ¶22).

A decision tree was created with various Decision and Chance (i.e., probability) nodes at each stage of the case that has a win/loss potential. At the end of each "branch" in the tree is a Payoff node, which is the sum of the probabilities multiplied by damages for the branch. The probabilities and values of the entire case are then summed, resulting in a final EV. (*Id.* at ¶23).

Both potential damages and win/loss probabilities were determined through a collaborative process involving attorneys familiar with the case through participation in review of documents, interaction and interviews with their clients, and/or knowledge of relevant case law. All participating attorneys also have significant experience with state and federal wage and hour collective and class action litigation generally. Therefore, damages and probabilities were determined by a combination of averaging attorney estimates and/or consensus opinion. Empirical research establishes that a collaborative process like this results in more reliable predictions of case value than a single attorney's experience and intuition. (*Id.* at ¶24).

Plaintiffs' Counsel represents that multiple Decision nodes were identified, each with corresponding Chance and Payoff nodes, such as: (1) collective/class or individual treatment; (2) results of summary judgment; (3) results of a jury trial; (4) a determination regarding willfulness; and (5) a determination regarding liquidated damages. Considerations also included "high," "mid," and "low" win rates. Settlement analysis, therefore, used both the damages model and node chance percentages in determining the EV for this case. (*Id.* at ¶25).

In this calculation, Plaintiffs' Counsel analyzed each potential risk of loss (*i.e.*, whether collective/class treatment was obtainable, summary judgment, willfulness, good faith, and potential jury awards) and assigned a probability value to each potential risk. The decision tree software compounded each of these probability values and applied those values to the damages model. This exercise allowed Plaintiffs' Counsel to fully appreciate the entire risk picture of this

case. The actual calculated EV can be submitted to the Court for in camera review, if the Court so directs. (*Id*. at ¶26).

Each node/stage reflects a future point in time, where Named Plaintiff cannot reach without going through months, and possibly years, of litigation and potential appeals, including thousands of dollars of discovery and substantial expenditure of time. Discovery would include written discovery, document production, and depositions. Expert time studies can cost upwards of $30,000-$50,000, if not more, depending on the type and number of studies needed, and locations analyzed. (*Id.* at ¶27).

The chances of winning or losing is more than just 50% one party wins or loses. Rather, the probabilities need to be compounded. Each node has a potential for winning and losing. For Named Plaintiff to achieve the maxim estimated damages, she would need to win at every single stage or node of risk of loss. (*Id*. at ¶28). As further discussed below, the total settlement amount exceeds the calculated expected value, which supports Plaintiffs' Counsel's strong belief that the settlement is fair, reasonable, adequate, and in the best interests of the Eligible Settlement Participants. (*Id*. at ¶¶14, 39).

## II.     The Court should grant FLSA approval.

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A.     The Seven-Factor Standard is satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, No. C2-05-500, 2008 U.S. Dist. LEXIS 51544, at *2-3, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th

Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13 (E.D. Ky. Oct. 23, 2008).

Here, Settlement satisfies the seven factors used by the Sixth Circuit when evaluating class/collective action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of Plaintiffs' Counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir.2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir.1983)), *Crawford*, 2008 WL 4724499 at *3.

### 1. No indicia of fraud or collusion exists.

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *6 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)).

Here, Defendant denies all liability and the Agreement was achieved only after arms-length and good faith negotiations between experienced counsel after a full day's mediation and continued subsequent negotiations, facilitated by a third-party neutral. (Docs. 12, 17; Agreement

at ¶¶10, 31, 34; Baishnab Dec. at ¶13). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

### 2. The complexity, expense, and likely duration of continued litigation favor approval.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *Graybill v. Petta Enters., LLC*, No. 2:17-cv-418, 2018 U.S. Dist. LEXIS 164152, at *14 (S.D. Ohio Sep. 25, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

If this case had not settled, the Parties would be required to engage in costly litigation and discovery, such as written discovery and depositions. Settlement, on the other hand, provides substantial relief to the Eligible Settlement Participants promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution. (Baishnab Dec. at ¶13).

### 3. The amount of discovery engaged in by the Parties.

The Parties engaged in substantial investigation and analysis before and during settlement negotiations. Specifically, Defendant produced certain time and pay data for the putative collective. Plaintiffs' Counsel engaged the services of a PhD data scientist to construct a damages model using the produced data, which was shared with the mediator and Defendant's Counsel. This damages model included a damages assessment of alleged unpaid time donning and doffing before and after shifts and during unpaid meal breaks. Plaintiffs' Counsel conducted a survey concerning the estimated length of time to don, doff, and other related tasks, which Named Plaintiff and the putative collective/class were alleged to have performed during their unpaid meal breaks, and the results were shared with the mediator and Defendant's Counsel. (Agreement at ¶9;

Baishnab Dec. at ¶12). Further, Named Plaintiff submitted eight (8) sworn declarations in support of her motion for conditional certification. (Doc. 26).

Both sides are represented by competent and skilled wage and hour attorneys. (Baishnab Dec. at ¶¶3-11). During negotiations, Counsel argued vigorously for their respective positions, and disputes remain, including whether Defendant was liable, whether any wages are owed, whether liquidated damages are recoverable, whether Defendant acted willfully, whether the matter could proceed collectively or on a class basis, and to what extent Named Plaintiff could prove damages at trial, if any. (Agreement at ¶35; Baishnab Dec. at ¶13). Accordingly, this factor supports settlement approval.

### 4. The likelihood of success on the merits.

Settlement represents a compromise of disputed claims. Specifically, the lawsuit alleges that Defendant failed to pay its food production employees properly for time spent donning and doffing sanitary clothing and washing their hands, resulting in unpaid overtime. On the other hand, Defendant denies the asserted claims and raised a number of defenses. (Docs. 1, 12, 15. 17; Agreement at ¶¶31, 35).

There was substantial contested motion practice, including Named Plaintiff's motions for conditional certification, expedited discovery, and equitable tolling, along with Defendant's motion to stay. (Docs. 26, 30, 21, 32, 33, 35, 58, 65). While Named Plaintiff's motion for conditional certification was denied without prejudice (Doc. 39), it would have been renewed under the new *Clark* standard, after completing pre-notice discovery. (Baishnab Dec. at ¶30).

Plaintiffs' Counsel calculated potential damages using a damages model that was shared in mediation. The model included toggles, by which the Parties could adjust the following parameters that would adjust the calculated estimated damages in real-time: percentage (%) of

liquidated damages; the start and end of the relevant period; pre-shift donning minutes; lunch doffing minutes; lunch donning minutes; and post-shift doffing minutes. (*Id.* at ¶12).

As outlined above, Plaintiffs' Counsel calculated the EV for this case and additional details of that process are discussed below. All four Plaintiffs' Counsel collaborated and provided blind estimates of their respective subjective predictions for the probabilities of the following nodes: (a) whether the case could proceed on a collective/class basis; (b) whether Named Plaintiff would survive a motion for summary judgment; (c) whether Named Plaintiff would prevail at trial; (d) whether Named Plaintiff could prove that Defendant acted willfully; (e) whether Defendant could prove it acted in good faith; (f-h) probabilities of a jury awarding high, middle, or low damages; and (i) whether the full 30 minute period of a shortened meal break would be compensable or whether only the alleged unpaid minutes would be compensable work time. This process included assessing whether plaintiffs could prove that any period donning at the start or doffing was not paid. (*Id.* at ¶29).

### a. Whether the case could proceed on a collective/class basis.

Plaintiffs' Counsel assessed risk as to whether Named Plaintiff's expected renewed motion for conditional certification would be granted under the new *Clark* standard. This would require substantial pre-notice discovery. (*Id.* at ¶30). For example, Defendant "operates six main facilities: four in Ohio (Washington Court House, Cincinnati (Brandworthy), Cincinnati (Muhlhauser), Dayton); one in Cambridge City, Indiana; and one in Frontenac, Kansas," and "a smaller facility in Carthage, Missouri." (Doc. 30 at PAGEID #: 159).

Pre-notice discovery would be expansively expensive and uncertain, and more so as to Rule 23 class certification. (Baishnab Dec. at ¶30). Additionally, the uncertainty of collective/class certification was increased because five of Defendant's "locations are unionized; two are not."

(Doc. 30 at PAGEID #: 159). If Named Plaintiff were able to proceed on an FLSA collective basis, then the Parties would engage in collective discovery that would have included depositions, written discovery, and document production. Discovery may have shown that Named Plaintiff could not proceed collectively under the FLSA, in which case Rule 23 class certification, with a higher burden of proof, would likewise had failed. The EV incorporates an estimated value for Named Plaintiff proceeding individually using estimated damages from the model, should Plaintiff lose at this node. (Baishnab Dec. at ¶30).

### b. Whether Named Plaintiff would survive summary judgment.

Plaintiffs' Counsel assigned a collaborative probability on the risk that Named Plaintiff might not survive summary judgment. If she had not, the calculated value of the case would essentially be zero dollars. Again, this would require substantial merits discovery. (Baishnab Dec. at ¶31).

### c. Whether Named Plaintiff would prevail at trial.

Should Plaintiff survive summary judgment, the next probability node examines whether Named Plaintiff would prove liability at trial, which again might result in a case value of zero dollars if she lost. (*Id*. at ¶32).

### d. Whether Named Plaintiff could prove willfulness.

If Named Plaintiff prevailed at trial, she would need to prove that Defendant acted willfully, which in turn has its own probability node for risk of loss. If Named Plaintiff lost this issue, FLSA damages would be limited to only two (2) years rather than three (3) years. (29 U.S.C. § 255; *Id*. at ¶33).

### e. Whether Defendant could prove it acted in good faith.

If Named Plaintiff lost on the issue of willfulness, Defendant might also successfully prove its affirmative defense of good faith, which has its own probability risk of loss node. If Defendant prevailed on this issue, then FLSA damages would be unliquidated. (29 U.S.C. § 260; Baishnab Dec. at ¶34).

### f. Amount awarded by the jury.

Even if the case proceeded on a collective/class basis and Named Plaintiff survived summary judgment and liability was established at trial, a yet-to-be-identified jury would need to find credible the presented testimony and evidence of how much unpaid overtime compensation Defendant should pay. This is reflected in various collective/class terminal ends of the EV as "high," "mid," and "low," representing the respective possible jury awards depending on which range of damages Plaintiff could prove, each having its own respective risk of loss. (Baishnab Dec. at ¶35).

### g. Amount of compensable meal break time.

And finally, if liability was established, the issue of whether the entire 30-minute meal break should be paid, or just part of it, would have been vigorously contested, the results of which would substantially affect the possible damages. Accordingly, this too was evaluated as its own risk of loss. (*Id*. at ¶36).

Further, as part of their pre-mediation preparations, Plaintiffs' Counsel conducted surveys concerning the estimated length of time to don, doff, and other related tasks, which Named Plaintiff and the putative collective/class performed during their unpaid meal breaks. The survey responses resulted in statistically significant estimates that were incorporated into Plaintiffs' Counsels'

calculated EV and were shared with the mediator and Defendant's Counsel in advance of mediation. (*Id*. at ¶¶12, 37; Agreement at ¶9).

The exercise of completing a calculated EV illuminates to the Parties, to the attorneys, and to the Court, that the probability of success is different than just a 50/50 chance of winning/losing. Rather, the probability must be compounded. Here, Plaintiffs' Counsel calculated that there was less than a 0.01% chance that Named Plaintiff could obtain maximum value at verdict, which would require Plaintiff to prevail on collective/class treatment, plus survive summary judgment, plus win the meal-break compensability issue, plus prevail at trial, plus win the willfulness and good faith issues, and then, convince a jury of maximum calculated damages. It would be akin to rolling eight sixes with eight dice all in one roll. At the other end of the analysis, there was a calculated 60% chance that the case could not proceed on a collectively/class basis and a 18% chance of losing at trial. (Baishnab Dec. at ¶¶28, 38).

In the present matter, the total settlement amount exceeds the calculated expected value. Courts have routinely found settlements fair and reasonable where there is a genuine dispute of fact regarding whether the employer violated the FLSA and the settlement amount exceeds the expected value of the case. *See, e.g., Chase v. Viaquest Residential Servs.*, S.D. Ohio No. 22-cv-1974, 2023 U.S. Dist. LEXIS 41416, at *3-4 (Mar. 10, 2023); *Cheikh Fassa, ex rel. Himself & Others Similarly Situated v. Express Inc.*, S.D. Ohio No. 2:21-c:22-cv-v-542, 2022 U.S. Dist. LEXIS 73599, at *4 (Apr. 5, 2022); *Johnson v. Centor, Inc.*, No. 5:19-cv-2622, 2021 U.S. Dist. LEXIS 213003, at *3 (N.D. Ohio Nov. 4, 2021). Conversely, Defendant has denied all liability. (Docs. 12, 17).

     **5.**      **The opinion of Plaintiffs' Counsel favors approval**.

"The recommendation of Plaintiffs' Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Granada Invs., Inc. v. DWG*

*Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); and *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018) (citing *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).

Here, Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and vigorously advocated in the best interests of the Named Plaintiff and the other Eligible Settlement Participants. And, as discussed above, based on the calculated EV, Plaintiffs' Counsel is confident that the settlement is fair, reasonable, and in the best interests of the Eligible Settlement Participants. (Baishnab Dec. at ¶¶13-14, 39). Accordingly, this factor favors approval of the settlement.

### 6. The reaction of absent collective members.

Settlement provides clear and easy to understand notice of the collective action lawsuit and includes 45-days by which Eligible Settlement Participants can join. Additionally, unlike Rule 23, participants must affirmatively join, and the Parties have agreed that the Court will retain jurisdiction over performance of the Settlement. (Agreement at ¶76). Additionally, Plaintiffs' Counsel thoroughly discussed the settlement with Named Plaintiff, who likewise agrees that the settlement is fair, reasonable, and in the best interests of the Eligible Settlement Participants. (Baishnab Dec. at ¶40).

Further, Named Plaintiff obtained 20 declarations from Eligible Settlement Participants, who testify that that they believe that the settlement is fair and equitable, that they are happy that this matter is resolved and expect that proceeds will benefit them and their families, as well as other collective members and their families, and that they urge the Court to approve the settlement. (**Exhibit 4**, ¶¶2-4). Therefore, the Court should find that this factor supports approval of the Settlement.

### 7.    The public interest.

"Public policy generally favors settlement of class action lawsuits." *Wright*, 2018 U.S. Dist. LEXIS 140019, at *13 and *Barnes v. Winking Lizard, Inc*., No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *11 (N.D. Ohio Mar. 26, 2019) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D.Ohio 2007)). Like in *Wright*, "the settlement confers immediate benefits on the Settlement collective, avoids the risks and expense in further litigation, and conserves judicial resources." *Id*. Additionally, Plaintiffs' Counsel is aware of no reason why an Eligible Settlement Participant would not be happy with the results, as settlement exceeded the calculated expected value, and the average payment after deducting fees, costs, and service payment, is projected to range from approximately $400-$500. (Baishnab Dec. at ¶39-40). Therefore, the Court should find that this factor supports approval of the Settlement.

### B.    The Settlement distributions are fair, reasonable, and adequate.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *See e.g.*, *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *15 (N.D. Ohio Mar. 8, 2010); and *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (citations omitted).

Plaintiffs' Counsel conducted a thorough assessment of the claims and defenses, including a calculated expected value, which exceeded the total settlement amount. (Baishnab Dec. at ¶¶14-39). Importantly, Judge Posner writing for a Seventh Circuit panel concluded that an EV is the proper method for determining the fairness of a class settlement: "A settlement is fair to the plaintiffs in a substantive sense…if it gives them the expected value of their claim if it went to trial…." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987)(explaining an EV calculation where a settlement of $7 million would be justified even where

theoretical damages not accounting for compounded risk of loss could be up to $1 billion). *See also*, *Siddiky v. Union Square Hosp. Grp.*, 2017 U.S. Dist. LEXIS 75301, at *16 (S.D.N.Y. May 17, 2017); *Anderson v. Torrington Co.*, 755 F. Supp. 834, 838 (N.D. Ind. 1991); *Chase v. Viaquest Residential Servs.*, S.D. Ohio No. 22-cv-1974, 2023 U.S. Dist. LEXIS 41416, at *3-4 (Mar. 10, 2023); *Cheikh Fassa, ex rel. Himself & Others Similarly Situated v. Express Inc.*, S.D. Ohio No. 2:21-c:22-cv-v-542, 2022 U.S. Dist. LEXIS 73599, at *4 (Apr. 5, 2022); *Johnson v. Centor, Inc.*, No. 5:19-cv-2622, 2021 U.S. Dist. LEXIS 213003, at *3 (N.D. Ohio Nov. 4, 2021).

Additionally, the Global Settlement Fund reflects unpaid overtime compensation of approximately 2-minutes pre-shift donning, 4-minutes meal-break donning/doffing, and 2-minutes post-shift doffing, plus approximately 22.82% liquidated damages. (Baishnab Dec. at ¶39). Accordingly, the settlement is fair, reasonable, and adequate.

### 1. The individual payments are reasonable and adequate.

As mentioned above, as part of negotiations, Defendant produced certain time and pay data for the putative collective/class. A PhD data scientist constructed a damages model using the produced data, which was shared with the mediator and opposing counsel, and used as the basis for negotiations. (Agreement at ¶9; *Id*. at ¶12). The total Settlement exceeds Plaintiff's pre-mediation EV calculation, and the average payment is projected to range from approximately $400-$500. (Baishnab Dec. at ¶39). Accordingly, and consistent with the opinion of Plaintiffs' Counsel, payments are reasonable and adequate.

### 2. The Service Award is proper and reasonable.

The Agreement provides for a Service Award of **$10,000.00** to Named Plaintiff in recognition of her substantial assistance rendered to Plaintiffs' Counsel and in pursuing the rights of all Eligible Settlement Participants. (Agreement at ¶41; *Id*. at ¶41). Courts routinely approve service awards to plaintiffs in class and collective action litigation, because service awards "are

efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *18, and *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *7.

Here, Named Plaintiff provided substantial time and effort in communicating with Plaintiffs' Counsel during the prosecution of the Action and negotiations, and was available throughout the whole day of mediation. She also put her name on the line, filing a lawsuit on the public docket, and taking a risk of potentially being "black-listed." And she stuck with the effort throughout the nearly three years of litigation and is expected to see the matter through final settlement consummation. (Baishnab Dec. at ¶41). Defendant does not contest the reasonableness of this amount and does not contest this application. (Agreement at ¶41).

### 3. The attorneys' fees to Plaintiffs' Counsel are proper and reasonable.

After the Court has confirmed that the terms of settlement are fair to the Plaintiffs, it may review the Agreement as to the provision of fees and costs to Plaintiffs' Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. §216(b).

In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers,*

*Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The Agreement provides a payment of attorneys' fees to Plaintiffs' Counsel in an upwards estimated amount of one-third (1/3) of the total settlement amount, or **$366,666.67**, paid from the Net Administrative Fund. "The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement." *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 U.S. Dist. LEXIS 210868, at *28 (S.D. Ohio, Sep. 25, 2020) (citing *Rawlings v. Prudential Bache Prop., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993)). Indeed, the "percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share…." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010). "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms*, N.D. Ohio No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *10-11 (July 27, 2018).

This Court has held, an award of one-third "is typical for attorney's fees in common fund, FLSA collective actions in this District" and is "the most appropriate method for determining reasonable attorneys' fees in wage and hour cases." *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *4, and 21-22 (S.D. Ohio Sep. 20, 2019) (quoting *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, at * 14-15 (S.D. Ohio July 11, 2014)); *see also, Osman v. Grube, Inc.*, N.D. Ohio No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, at *6 (May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award and has been approved in similar FLSA collective actions in this judicial district.") (Internal citation omitted); *O'Neil v. Miller Pipeline, LLC*, No. 2:20-cv-4034, 2021 WL 5376235, at *2 (S.D. Ohio

Nov. 2, 2021) (finding attorneys' fees representing approximately one-third of the total settlement fund as reasonable); *Croskey v. Hogan Servs., Inc.*, No. 2:20-cv-3062, 2021 WL 3012278, at *2 (S.D. Ohio July 15, 2021) (further citation omitted) ("[A]ttorneys' fees ... represent[ing] one-third of the total settlement amount ... are reasonable."); *Campbell v. Wise Med. Staffing, Inc.*, No. 2:18-CV-493, 2020 WL 9259704, at *2 (S.D. Ohio Feb. 21, 2020) ("The Court ... finds that one-third of the Settlement Fund is a reasonable percentage of the fund to be awarded for attorney's fees.").

This conclusion was reiterated in *Harsh v. Kalida Mfg.*, N.D. Ohio No. 3:18-cv-2239, 2021 U.S. Dist. LEXIS 175869, at *20 (Sep. 13, 2021). In *Harsh*, the Court held that while a Court can utilize either the percentage-of-the-fund or the Lodestar approach to determine whether an award of attorneys' fees is reasonable, the percentage-of-the-fund approach is more appropriate in class and collective actions, as it "rewards counsel for success and penalizes it for failure." *Id.* at *19-20. The Court further noted that the Lodestar method was more appropriate in wage and hour cases that "involve relatively small claims and therefore small amounts of damages in question," because "counsel for employees will inevitably be required to expend substantial resources and time, sometimes accruing fees several times greater than the value of damages in the case." *Id.* at *20. In contrast, in cases involving a common settlement fund the Court found that it "sees no compelling reason, let alone any reason, to deviate from" a request for one-third of the fund. *Id.*

Further, Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation costs. They not only invested time, but also paid significant expenses up front. They will not be paid for any time during effectuation of the settlement. (Baishnab Dec. at ¶42). "In doing so, Plaintiffs' Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of

approving the requested fee award." *Ganci v. MBF Insp. Servs.*, S.D. Ohio No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (Dec. 3, 2019); *see also, Barnes*, 2019 U.S. Dist. LEXIS 65657, at *15 ("Plaintiffs' Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Courts in this district acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *16. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiffs' Counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, S.D. Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters."). An award of one-third (1/3) of the settlement fund is reasonable and still advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d at 930; and *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

Defendant does not and will not contest the reasonableness or the award of fees. (Agreement at ¶41). Further, the attached 20 declarations from Eligible Settlement Participants testify that they understand that Plaintiffs' Counsel took this case on a contingent basis, including that Plaintiffs' Counsel covered all the costs so far and took the risk of receiving no compensation

and losing all incurred expenses if a favorable result was not achieved, and that they urge the Court to approve the settlement. (**Ex. 4**, at ¶¶4-5). Accordingly, the Court should approve the requested attorneys' fees.

### 4. The Court should authorize reimbursement of costs.

Plaintiffs' Counsel should also be reimbursed their litigation expenses, which are presently **$14,791.22**. (Baishnab Dec. at ¶43). "Under the common fund doctrine, Plaintiffs' Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at *20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id*.

Expenses include filing fee, service of process, postage, analysis of the data production and creation of the damages model, and mediation fees. (Baishnab Dec. at ¶43). Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel out of the Net Administrative Fund as set forth in the Agreement. Defendant does not and will not contest the reasonableness or the reimbursement of costs. (Agreement at ¶40).

## III. CONCLUSION

The Parties submit that this settlement is a fair, reasonable, and adequate resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Plaintiffs' Counsel's request for attorney fees and expenses; (3) approve the requested service payment; and (4) retain jurisdiction to enforce the settlement, if necessary.

Respectfully submitted,

**NILGES DRAHER LLC**

*/s/ Jeffrey J. Moyle*
Jeffrey J. Moyle (0084854)
Robi J. Baishnab (0086195)
1360 East 9th Street, Suite 808
Cleveland, OH 44114
Telephone: 216-230-2955
Facsimile: 330-754-1430
Email: jmoyle@ohlaborlaw.com
　　　rbaishnab@ohlaborlaw.com

Hans A. Nilges (0076017)
7034 Braucher, N.W., Suite B
North Canton, OH 44720
Telephone: (330) 470-4428
Facsimile: (330) 754-1430
Email: hans@ohlaborlaw.com

*Counsel for Plaintiffs*

**JACKSON LEWIS P.C.**

*/s/ David A. Nenni (with permission)*
David A. Nenni (0080826)
Katharine C. Weber (0083562)
201 East Fifth Street, 26th Floor
Cincinnati, Ohio 45202
Telephone: 513-898-0500
Facsimile: 513-898-0051
Email: David.nenni@jacksonlewis.com
　　　Katharine.weber@jacksonlewis.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

　　I hereby certify that the foregoing was filed for service via the Court's CM/ECF system on this February 16, 2024. Parties may access this filing through the Court's system.

*/s/ Jeffrey J. Moyle*
*Counsel for Plaintiffs*